In the Matter of the Taxation, etc., of Estate of DAVID F. HALL, Deceased.

*Supreme Court, First Department, General Term, November 7, 1889.*

1. *Taxes.* *Collateral Inheritance.*—The question of restitution cannot arise on an appeal from a decree directing the payment of a collateral inheritance tax, taken after its payment. Such payment will not be shown by a properly certified record.
2. *Same.*—The state comptroller and the city comptroller or county treasurer, to whom such tax has been paid, must be made parties to an appeal from such decree.
3. *Same.*—The proper mode of obtaining restitution from the state in such case is defined in section 12, chap. 713 of 1887.
4. *Appeal.* *Certificate.*—An appeal from such decree can only be heard upon a duly certified record.

Appeal by David A. Hall, sole legatee and devisee under the last will and testament of David F. Hall, deceased, from an order of the surrogate directing the ancillary executor to pay a collateral inheritance tax, amounting to the sum of $12,419.94, with interest.

*E. G. Duvall, Jr.*, for appellant.

*Geo. W. Eastman*, for respondent.

BARRETT, J.—This is evidently a friendly appeal arranged between the legatee and the ancillary executor for the purpose of obtaining restitution of the sum paid under the surrogate's decree. This decree was made in October, 1887, upon the authority of a general term decision, second department, handed down in July of that year. In the Matter of Enston, 46 Hun, 506. It was there held that property within this state which passed by will from a non-resident decedent

to collateral relatives was taxable under the act of 1885, chap. 483. Mr. Hall, the present legatee, was fully heard before the making of the decree. The ancillary executor, in November, 1887, paid the tax to the comptroller of the city of New York, and to the treasurers of Kings and Queens counties. Thus the decree was completely executed.

The matter stood in this way until April, 1889, when the court of appeals reversed the Enston case and held, that under the circumstances there disclosed the property within this state was *not* taxable under the act of 1885. Thereupon Mr. Duvall, as attorney for Hall, admitted service of a copy of the surrogate's decree as of the date of June 24, 1889 ; and within thirty days from the latter date, namely, July 10, 1889, he took the present appeal. He seems to have served notice of this appeal upon the attorney-general and the district attorney of this county, but not upon the comptroller of the state or of the city of New York, nor upon either of the county treasurers above referred to. A case upon appeal seems to have been made up by agreement between Mr. Duvall and Mr. Eastman, for there is no certificate, with regard to the record, from the surrogate's court. And the appeal papers contain a stipulation, *dehors* the record, to the effect that the ancillary executor duly paid the tax as already stated ; and to this stipulation is appended the receipts of the respective officials. It would be sufficient for the due disposition of this matter, as thus irregularly presented, to say that the record properly certified is not before us, and that, therefore, the appeal cannot be heard. Such indeed must be the disposition of the case, and such would have been its disposition without investigation, but for the fact that it was submitted without argument.

As, however, the case had to be examined before the irregularity pointed out could well be discovered, we may as well suggest to the learned counsel some difficulties which became apparent before this irregularity was realized. The question of restitution, it seems to us, cannot come up as

part of the hearing and decision of the appeal. The record, properly certified, will not show the execution of the decree, and the question whether such decree should be affirmed or reversed must be independently determined.

If it shall be reversed the mode of obtaining restitution is pointed out by the collateral tax act, Laws 1887, chap. 713, § 12, for the ordinary practice under the Code, § 2587, is inapplicable where the money has actually been paid into the state treasury. Another question which counsel must consider before again asking us, even upon a correct record, to review this decree is, whether the comptrollers of the state and city, and the treasurers of the two counties, must not be made parties to the appeal under § 2573. The state of New York, the city comptroller and the two county treasurers seem to have interests which are directly affected by the decree. The tax has doubtless long since been paid into the state treasury and five per cent. for collection retained by the officers under § 22 of the act of 1885.

The question of the proper method of obtaining restitution from the state was considered by this court in the late case of In the Matter of John L. Howard, deceased, *ante*, 8, and it was there held that the remedy was under § 12 of the act of 1887, chap. 713.

But, first, there must be a decision on the question of affirmance or reversal, and that decision can only be made upon a duly certified record, and probably upon a compliance with § 2573 as to the proper parties upon the appeal. As the matter now stands the hearing is dismissed and the appeal stricken from the calendar, without prejudice.

VAN BRUNT, P. J., and DANIELS, J., concur.

---

NOTE ON "TAXABLE TRANSFERS OF PROPERTY."

The act in relation to taxable transfers of property contemplates, not only the taxation of such interests as are capable of valuation at the death of a decedent, but every interest intermediate or future, derived under him, not excepted by the act. Matter of Stewart, 131 N. Y. 274. A party who

takes upon the execution of a power of appointment contained in a will, takes under and by virtue of the will. Id. If such party is not one excepted by the act, the property which passes to him under the power, is taxable. Id. Contingent interests given by the will, which, after the death of a testator, are converted, by the happening of the event upon which they are limited, into actual vested estates, may then be appraised and taxed under the provisions of said act. Id. The provision of § 2650 of the Code does not take away the right to charge interest, prior to such decree, on a tax imposed by the act. Id. The case is provided for by the provision of the act, which directs that a modified rate of interest shall be charged where, by reason of claims made upon the estate, necessary litigation or other unavoidable cause of delay, the estate of the decedent cannot be settled. Id.

See further on this subject, note on "Collateral Inheritance Tax," in 3 Silvernail (Sup. Ct.), 174. This note was prepared before the passage of the amendments of 1892, and the enactment of the "Act in relation to taxable transfers of property," chap. 399 of 1892. The latter act expressly repealed chap. 483 of 1885, chap. 713 of 1887, chaps. 307 and 479 of 1889, chap. 215 of 1891 and chaps. 167, 168 and 169 of 1892, and, though in many places changing the phraseology and order of the provisions, substantially re-enacted the material portions of the former law.

But the following new provisions are noted :

In section 9 : "No safe deposit company, bank or other institution, person or persons holding securities or assets of a decedent, shall deliver or transfer the same to the executors, administrators or legal representatives of said decedent unless notice of the time and place of such intended transfer be served upon the county treasurer or comptroller at least five days prior to the said transfer. And it shall be lawful for the said county treasurer or comptroller, personally or by representative, to examine said securities or assets at the time of such delivery or transfer."

In section 10: "Every petition for ancillary letters testamentary or ancillary letters of administration made in pursuance of the provisions of article seven, title three, chapter eighteen of the Code of Civil Procedure shall set forth the name of the county treasurer or comptroller as a person to be cited as therein prescribed, and a true and correct statement of all the decedent's property in this state and the value thereof; and upon the presentation thereof the surrogate shall issue a citation directed to such county treasurer or comptroller; and upon the return of the citation the surrogate shall determine the amount of the tax which may be or become due under the provisions of this act, and his decree awarding the letters may contain any provision for the payment of such tax or the giving of security therefor which might be made by such surrogate if the county treasurer or comptroller were a creditor of the decedent."

In section 12: "And for that purpose the said appraiser is authorized to issue subpoenas and to compel the attendance of witnesses before him and to take the evidence of such witnesses under oath concerning such property and the value thereof."

In section 13: " or, the surrogate may so determine the cash value of all such estates and the amount of tax to which the same are liable without appointing an appraiser."

In section 15: " Such costs shall be fixed by the surrogate in his discretion, but shall not exceed in any case where there has not been a contest the sum of one hundred dollars, or where there has been a contest the sum of two hundred and fifty dollars." . . . . . . " In proceedings to which any county treasurer or comptroller is cited as a party under sections eleven and twelve of this act, the state comptroller is authorized to designate and retain counsel to represent such county treasurer or comptroller therein, and to direct such county treasurer or comptroller to pay the expenses thereby incurred, out of the funds which may be in his hands on account of this tax."

In section 17: " Such fees shall be in addition to the salaries and fees now allowed by law to such officers."

In section 18: " which shall be a public record, and in which he shall enter the name of every decedent, upon whose estate an application to him has been made for the issue of letters of administration, of letters testamentary, or ancillary letters, the date and place of death of such decedent, the estimated value of his real and personal property, the names, places, residences, and relationship to him of his heirs-at-law, the names and places of residence of the legatees and devisees in any will of any such decedent, the amount of each legacy and the estimated value of any real property devised therein, and to whom devised. These entries shall be made from the data contained in the papers filed on any such application, or in any proceeding relating to the estate of the decedent." . . . . . . . " The state comptroller shall also furnish to each surrogate forms for the reports to be made by such surrogate, which shall correspond with the entries to be made in such book."

All of sections 14, 19, 22, 23, 24, 25, 26.